# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Doniell Duncan,                                                  Case No. 3:20-cv-2665-JGC

        Plaintiff

        v.                                                       **ORDER**

Lourdes University,

        Defendant.


This is an employment discrimination case. *Pro se* Plaintiff Doniell Duncan brings claims against her former employer, Defendant Lourdes University ("Lourdes"), for sexual harassment and retaliation for raising a complaint of sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq.*, and analogous provisions of Ohio law, R.C. § 4112.01 *et seq*.

Pending is Defendant's Motion for Summary Judgment. (Doc. 30). Plaintiff has filed an Opposition (Doc. 38), and Defendant has filed a Reply (Doc. 43).

Also pending are Plaintiff's Motions to Exclude Evidence (Doc. 44) and for Leave to Amend Complaint (Doc. 45). Defendant has filed Oppositions to both Motions (Docs. 46 and 47). Plaintiff missed the deadline for filing her Replies, and I denied her Motion for Extension of Time to do so. (Doc. 50).[1]

---

[1] Plaintiff has also filed a Motion for Reconsideration of my decision to deny her Motion for Extension of Time. (Doc. 53). Reconsideration is appropriate in limited circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice." *Sherwood v. Royal Ins. Co. of Am.*, 290 F. Supp. 2d 856, 858 (N.D. Ohio 2003) (Katz, J.). Plaintiff argues that denial of her motion will be an "obvious injustice," (Doc. 53, pgID 1598),

Finally, also pending is Plaintiff's Motion seeking my recusal from this case. (Doc. 51).

Defendant has filed an Opposition. (Doc. 54). Plaintiff has filed a Reply. (Doc. 56).

For the following reasons, I grant Defendant's Motion (Doc. 30) and deny Plaintiff's

Motions (Docs. 44, 45, and 51).

## Factual Background

Lourdes is a Catholic institution that offers undergraduate and graduate degrees. In April

2018, Lourdes hired Duncan as an Academic Success Specialist. (Doc. 30-1, pgID 246). In that

role, Duncan managed Lourdes's testing center, which entailed managing the university's testing

procedures. (*Id.*, pgID 248-49). Alisa Smith, the Director of the Academic Success Center, was

Duncan's immediate supervisor. (Doc. 41-11, pgID 1015).

In or around May 2018, Duncan had a meeting with Smith and Curtis Kachur, one of

Duncan's coworkers. (Doc. 41-10, pgID 924-26). During the meeting, Smith warned Duncan

against dating Chris Kellar, a Lourdes business school student whom Smith considered to be

"crazy." (*Id.*). At some point during the meeting, Smith called Brittany Kuhr, Lourdes's Director

of Institutional Advancement, and placed her on speaker phone. (*Id.*). Approximately a day later,

Smith made another comment to Duncan about avoiding a romantic relationship with Kellar.

(*Id.*, pgID 932). While Duncan denies ever dating Kellar, she does acknowledge having a

conversation with him once at the testing center, meeting him one time at a park, and texting him

"from time to time." (*Id.*, pgID 926-27).

---

but she provides no support for this conclusory statement. She complains about the alleged
conduct of Defendant's counsel, but the issues she raises have nothing to do with her failure to
submit her Replies on time. She has not pointed to any "manifest injustice," and I deny her
Motion for Reconsideration.

During several meetings over summer 2018, Duncan expressed dissatisfaction with her role, as well as interest in a new one, to Beverly Sanders, the Director of Human Resources, and her administrative assistant, Heidi Keller. (Doc. 30-2, pgID 330-31; Doc. 41-10, pgID 929-30). According to Sanders, Duncan, during one of those meetings, told her "in general terms" that she disliked her job. (Doc. 30-2, pgID 330-31). Sanders says she encouraged Duncan to seek a different one at the university. (*Id.*, pgID 330-31). Duncan recalls complaining to Sanders about Smith's "unprofessional behavior," although she admits never reporting "harassment" specifically. (Doc. 41-10, pgID 930).

In November 2018, Smith issued Duncan a formal written warning for tardiness, attendance issues, and taking extended breaks. (Doc. 41-11, pgID 1053).

On December 10, 2018, Duncan dual-filed a charge ("First Charge") with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission alleging sex discrimination and retaliation. (Doc. 30-1, pgID 313). Nothing in the record indicates if or when Duncan received a Dismissal and Notice of Right to Sue letter for the First Charge. On January 3, 2019, Sanders received Duncan's First Charge. (Doc. 30-2, pgID 332).

On December 16, 2018, Duncan filed a Title IX complaint for sex harassment with Lourdes. (*Id.*, pgID 331). Lourdes's Title IX Director, Michelle McDevitt, met with Duncan to discuss and investigate her complaint. (*Id.*). McDevitt determined that the complaint primarily related to Duncan's employment and referred the complaint to Sanders for further investigation. (*Id.*). Sanders' investigation did not substantiate Duncan's harassment allegations. (*Id.*). As part of her investigation, Sanders did speak with Smith, who "agreed to be sensitive to any situations that could be making [Duncan] uncomfortable." (*Id.*).

3

In April 2019, Lourdes's Accessibility Coordinator, Sara Soper, approved testing accommodations for a student recovering from an unexpected surgery. (Doc. 30-1, pgID 317-18). The testing center normally requires one week of advance notice for any accommodations, and the student had requested them less than one week out. (*Id.*). Upon learning about the accommodations from the student, Duncan emailed her colleagues, including Smith and Soper, to express concern that the student's accommodations were against testing center policy. (*Id.*). Both Soper and Smith responded to Duncan's message – explaining that, while students normally must provide a week of notice, an exception was appropriate due to the unexpected nature of the student's surgery and the need to make students feel "safe and comfortable" during exam season. (*Id.*).

A couple hours later, Duncan, copying Smith and Soper, emailed the student. (*Id.*, pgID 319). In her email, Duncan told the student that Soper had no authority to approve her testing accommodations and that the student would not receive all the accommodations she had requested. (*Id.*).

Four days after Duncan emailed the student, Smith met with Duncan to discuss the situation. (Doc. 41-11, pgID 1092-93). During the meeting, Smith told Duncan that her email reflected poor judgment because she disobeyed Smith's instruction, disparaged Soper, and caused undue stress for the student. (*Id.*). Eight days after the meeting, Smith emailed Duncan to recap what they discussed. (Doc. 30-1, pgID 320-22). She instructed Duncan, "for the time being," to seek approval from her before sending any more emails to her testing center colleagues or students. (*Id.*). She sent the email at 8:33 a.m. and gave Duncan until noon to reply and acknowledge Smith's instruction. (*Id.*). Duncan did not respond until 1:31 p.m. the next day. (*Id.*). She denied doing anything wrong, accused Smith and Soper of changing her job duties

under "false pretenses," and said that she would need formal notification from Human Resources before following Smith's guidelines regarding her work email usage. (*Id.*).

Smith forwarded her email exchange with Duncan to Sanders. (*Id.*). After reviewing the exchange, Sanders recommended Duncan's termination to the VP of Academic Affairs. (Doc. 30-2, pgID 333). The VP of Academic Affairs approved Sanders's recommendation, and, on May 1, 2019, Sanders met with Duncan to communicate the decision and give her an opportunity to resign. (*Id.*, pgID 333-34). Duncan resigned the same day. (*Id.*, pgID 325).

During her deposition, Duncan elaborated on other incidents, aside from Smith's questioning of her friendship with Kellar, which she considers to constitute sexual harassment:

- Sometime in summer 2018, Duncan overheard Soper joke to another colleague that Duncan was a "musty asshole." (Doc. 41-10, pgID 941).

- Sometime in summer 2018, Duncan overheard a student, Nicole Munsey, telling Kachur that Duncan did not deserve her job. (Doc. 41-11, pgID 996).

- Sometime in late-summer 2018, Duncan overheard DeWayne Beggs, a Lourdes employee, comment to someone else that she "needed to be watched." (*Id.*, pgID 991). Duncan believed that Beggs made this comment because of her summer 2018 meetings with Sanders and Keller during which she requested a new role at Lourdes. (*Id.*).

- Sometime in fall 2018, Duncan overheard her colleague, Jacob Dupree, telling someone else that Duncan was arrogant and had a bad attitude. (Doc. 41-10, pgID 892). Dupree also said that Duncan looked like someone he knew in high school, questioned how she could not be interested in him, and suggested that, due to her age, she should be trying to get married and have a baby. (*Id.*, pgID 894-95). Duncan interpreted Dupree's statements as impliedly retaliatory for rejecting his advances. (*Id.*).

- Sometime in fall 2018, a student-worker, Carlos Echevarria, told Duncan that she "needed to get [her] ass beat for turning down" Dupree and that 'getting laid is how people handle their problems around here." (*Id.*, pgID 898). Duncan also overheard Echevarria tell other students that, in reference to Duncan, Dupree needed to "hit it and quit it." (*Id.*).

- Sometime in late-summer or early-fall 2018, Duncan overheard a student, Dakota Blecke, tell Kachur that people only liked Duncan for her body. (*Id.*, pgID 900). Later

that same day, Duncan overheard Blecke tell other students the same thing. (*Id.*, pgID 905).

- Sometime after Duncan filed her First Charge, she overheard two students, Stephan Albrecht and Cassidy Lutz discussing the Charge and how Duncan's life would be "a living hell" if she did not drop it. (Doc. 41-11, pgID 986-87).

- On January 8, 2019, five days after Lourdes received Duncan's First Charge, Duncan overheard Joyce Litten, a Lourdes professor, tell a colleague that she could not believe Duncan "told" on the students. (Doc. 41-10, pgID 906).

- On January 25, 2019, Duncan overheard a student, Daija Stafford, telling others, including Echevarria, that Duncan had to be a "certain type of person to turn down Jacob Dupree." (*Id.*, pgID 909).

- On February 7, 2019, Duncan overheard a conversation between two Lourdes students, Latyrah Beasley and Cassidy Lutz. (*Id.*, pgID 945-46). Lutz commented that Duncan was not "being sexy." (*Id.*). Beasley said that no one at Lourdes wanted Duncan to be there. (*Id.*).

- On an unknown date, Duncan overheard a student, Kennedy Adams, criticize the way Duncan dressed and say that she must not be interested in Dupree because she was still in love with someone from high school. (*Id.*, pgID 913-14).

- On an unknown date, Duncan overheard a student, Brandy Lowry, tell someone else that Duncan was "playing hard to get." (*Id.*, pgID 921).

- On an unknown date, Kuhr, Lourdes's Director of Institutional Advancement, asked Duncan why she does not return to Ohio State University. (*Id.*, pgID 922).

- On an unknown date, Duncan overheard a student, Corey Pargo, tell other students that the only person who liked Duncan was Dupree. (Doc. 41-11, pgID 1004).

When discussing these incidents during her deposition, Duncan made clear that she did not report any of them to Lourdes until her December 16, 2018 Title IX complaint. She also did not report to Lourdes any of the incidents that occurred after her Title IX complaint submission.

On September 18, 2019, after her resignation, Duncan dual-filed a second charge ("Second Charge") with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission – this time, alleging only retaliation. (Doc. 30-1, pgID 328).

**Motion for Recusal**

On August 28, 2023, Duncan moved for my recusal from her case under 28 U.S.C.

§ 455(a). (Doc. 51).

Duncan's Motion arises from interactions between the Court, Brittanie Kuhr, and herself

that occurred in January of this year. On January 17, 2023, Kuhr, a non-party witness, sent an *ex*

*parte* communication to my chambers email. (Doc. 51-2, pgID 1574). She wrote that, a day

prior, Duncan visited her home to serve a subpoena to take Kuhr's deposition for this case. (*Id.*).

Kuhr questioned the legitimacy of the subpoena and wrote to my chambers to inquire how she

should proceed. (*Id.*). The courtroom deputy responded to acknowledge receipt of Kuhr's email.

She copied Duncan on every communication she had with Kuhr. (*See id.*, pgID 1572). On

January 18, 2023, I held a status conference with Duncan and counsel for Lourdes to discuss the

matter. During that status conference, I relayed to Duncan that it was improper for her to

personally serve subpoenas on deposition witnesses. *See* Fed. R. Civ. P. 45(b)(1). I instructed

her, moving forward, to contact Lourdes's counsel to arrange depositions with any witnesses that

are or were previously associated with Lourdes. I affirmed the pretrial discovery deadline.

As I understand it, Duncan's argument is that my conduct during these interactions

created the appearance of bias against her and warrants recusal.

"[A] federal judge has a duty to sit where not disqualified which is equally as strong as

the duty to not sit where disqualified." *Laird v. Tatum*, 409 U.S. 824, 837 (1972). Under 28

U.S.C. § 455(a), I am to recuse myself "in any proceeding in which [my] impartiality might

reasonably be questioned." This is an objective inquiry that requires me to determine whether a

reasonable person would conclude my impartiality might reasonably be questioned. *United*

*States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013). "Prejudice or bias must be *personal, or*

*extrajudicial*, in order to justify recusal." *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989) (emphasis added).

As an initial matter, Duncan has forfeited her argument for recusal. In the seven months between the January 18 status conference and her motion for recusal, she has filed an Opposition to Lourdes's Motion for Summary Judgment (Doc. 38) and at least two substantive Motions of her own on unrelated matters. (Docs. 44 and 45). Duncan filed her Motion for Recusal four days after I, on August 24, 2023, denied her Motion for Extension of Time to file Reply Briefs in support of her two substantive Motions. In other words, Duncan had ample opportunity to raise her argument for recusal (particularly in her Opposition to Lourdes's Motion for Summary Judgment) yet only did so shortly after receiving an adverse ruling on an unrelated Motion. Duncan's forfeiture of her recusal argument is clear under these circumstances. *See James v. Cuyahoga Cnty.*, No. 1:21-CV-01958, 2023 WL 2445112, at *10 (N.D. Ohio Mar. 10, 2023) (Calabrese, J.).

In any case, Duncan's argument for recusal is without merit. The heart of her argument is the alleged appearance of bias stemming from my conduct shortly before and during the January 18 status conference. But everything I did was pursuant to my judicial duties – *i.e.*, administering a status conference and having the courtroom deputy respond (while copying Duncan) to an email from an interested party regarding Duncan's case. She has not established any personal or extrajudicial appearance of bias on my part. In fact, despite there being a court reporter present for the status conference, Duncan has not cited to any portion of the transcript to support her claim that I appeared to exhibit any prejudice or bias against her.

For all of these reasons, I deny her Motion for Recusal.

8

**Summary Judgment Standard of Review**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant initially must show the absence of a genuine issue of material fact. *Id.* at 323. "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008) (quoting *Celotex*, *supra*, 477 U.S. at 325).

Once the movant carries its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I should grant summary judgment where "in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014).

I am to "liberally construe" filings from *pro se* litigants. *Reynolds-Bey v. Harris*, 428 F. App'x 493, 498 (6th Cir. 2011).

**Summary Judgment Discussion**

Duncan brings claims for sexual harassment and retaliation under Title VII and analogous provisions of Ohio state law. I address each in turn.

9

### 1.  Sex Harassment Under Title VII

"Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII . . . action." *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002). "To exhaust administrative remedies, a plaintiff must file an EEOC charge . . . if the plaintiff has instituted proceedings with a state or local agency, within 300 days." *Id.* at 352 (citing 42 U.S.C. § 2000e–5(e)). "Once the EEOC dismisses the charge and issues a right-to-sue letter, the plaintiff has 90 days to file a civil action." *Id.* (citing 42 U.S.C. § 2000e–5(f)(1)). The imposition of a time bar is subject to waiver, estoppel, and equitable tolling, but federal courts adopt those doctrines "sparingly." *Id.*

There is nothing in the record indicating if and when the EEOC dismissed Duncan's First Charge. It is therefore unclear whether Duncan filed her Complaint, dated November 30, 2020, within the 90 days she had after the EEOC's disposition of the First Charge. Duncan has made no arguments supporting the application of the doctrines of waiver, estoppel, or equitable tolling.

In other words, Duncan has not made any affirmative showing that her Complaint was timely or that an equitable doctrine applies to vitiate the timeliness requirement. She has not shown exhaustion of administrative remedies for her Title VII sex harassment claim, and I accordingly grant Lourdes's Motion for Summary Judgment as to that claim.

### 2.  Sex Harassment Under State Law

On the other hand, at the time Plaintiff filed her Complaint, Ohio's employment discrimination statute did not require her to exhaust administrative remedies. *See Flagg v. Staples the Off. Superstore E., Inc.*, 138 F. Supp. 3d 908, 914 (N.D. Ohio 2015) (Boyko, J.)

(granting summary judgment on Title VII sex discrimination claim for failure to exhaust administrative remedies but not on analogous state law claim).[2]

Where harmonious, the "Title VII framework" applies to discrimination claims under Ohio state law. *See Ulmer v. Dana Corp.*, 200 F. Supp. 2d 804, 818 (N.D. Ohio 2002) (Katz, J.), *aff'd*, 115 F. App'x 787 (6th Cir. 2004). A plaintiff can establish a prima facie case of hostile work environment if:

> (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable.

*Stokes v. Ohio Truck Sales, LLC*, 633 F. Supp. 3d 1023, 1032 (N.D. Ohio 2022) (citing *Ejikeme v. Violet*, 307 F. App'x 944, 949 (6th Cir. 2009)).

Lourdes disputes Duncan's ability to establish the latter three prongs of the analysis.

### A. Harassment Based on Sex

Lourdes argues that Duncan has identified few to no harassing statements that others made because of her gender. Aside from a conclusory statement otherwise, Duncan offers little response. (Doc. 38, pgID 688).

"Harassment is based on sex when an employee is 'exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 565 (6th Cir. 2021) (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998). In other words, a plaintiff needs to show that, but for a plaintiff's sex, she would not be the object of harassment. *Id.*

---

[2] Ohio has since amended their employment discrimination statute to require exhaustion. R.C. § 4112.052(B) (effective April 15, 2021).

Of the allegedly harassing incidents Duncan identifies, five stand out to me as ones a jury

could reasonably infer occurred because of her gender:

- Smith's comments to Duncan in or around May 2018 warning her against dating Kellar.

- Dupree's suggestion in fall 2018 to someone else, which Duncan overheard, that, due to her age, she should get married and have a baby.

- Echevarria's statements in fall 2018 to Duncan that she "needed to get [her] ass beat for turning down" Dupree and that "getting laid is how people handle their problems around here." Additionally, Echevarria's comment to another student that Dupree needed to "hit it and quit it."

- Blecke's statement in late-summer or early-fall 2018 to someone else, which Duncan overheard, that people only like Duncan for her body.

- The February 2019 conversation between Beasley and Lutz, which Duncan overheard, during which Lutz criticized Duncan for not "being sexy."

The other comments that Duncan identifies are too vague and general for a reasonable

jury to conclude as gender motivated.

### B.  Severe and Pervasive

Lourdes next argues that any harassment was not severe or pervasive. Here, too, Duncan

scarcely responds – merely offering a conclusory header statement to the contrary and citing

generally to her "many meeting notes, written complaints and Title IX reports." (Doc. 38, pgID

688).

Plaintiff must show that "under the totality of the circumstances the harassment was

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir.

2007). I am to consider "the frequency of the discriminatory conduct; its severity; whether it

[was] physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interfere[d] with an employee's performance." *Id.* The inquiry has both a

subjective and objective component. The victim must subjectively find the conduct abusive, and a reasonable person would need to find it so. *Arnold v. Marous Bros. Const.*, 211 F. App'x 377, 382 (6th Cir. 2006). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Wanchik v. Great Lakes Health Plan, Inc.*, 6 F. App'x 252, 263 (6th Cir. 2001) (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir.1991).

I will only consider the allegedly harassing incidents that I have determined were "based on sex." *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000).

Although the five incidents all may be inappropriate in the workplace, they are neither severe nor pervasive. Most of them were not directed at Duncan, who merely overheard them. *See E.E.O.C. v. Spitzer Mgmt., Inc.*, 866 F. Supp. 2d 851, 860 (N.D. Ohio 2012) (Adams, J.) (distinguishing racially harassing comments, which speakers directly made to a plaintiff, as comparably more severe than comments that a plaintiff overheard).

Smith's comments about Duncan's friendship with Kellar and Dupree's comments that, given her age, Duncan should get married and have a baby are certainly offensive, but they are not severe. The comments from Smith and Dupree are not physically threatening, sexually explicit, or more than slightly embarrassing to a reasonable person. Nor are the comments from Blecke or Lutz regarding Duncan's appearance.

Echevarria's comment that Duncan needed her "ass beat" for rejecting Dupree and his comments concerning her sex life do appear comparably more severe than the others. Even so, a severe comment in isolation will not establish a hostile work environment. *See Stokes, supra*, 633 F. Supp. 3d at 1033-34 (finding that an individual's singular comment that he "grabbed [a plaintiff's] butt" did not establish a hostile work environment). While Echevarria's alleged

13

comments are wholly inappropriate, they constitute an isolated incident – one that is not the basis of an actionable hostile work environment claim. *See Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir. 2000).

*Morris, supra*, is instructive. There, the Sixth Circuit affirmed the district court's grant of summary judgment on a harassment claim even when a supervisor: (1) made multiple dirty jokes in the plaintiff's presence, (2) made a verbal sexual advance toward her in the context of possibly giving her a better job evaluation, (3) called her a derogatory nickname related to her appearance, and (4) made comments about her dress. 201 F.3d at 790. The Sixth Circuit determined that the conduct "consisted of the kind of simple teasing, offhand comments, and isolated incidents that [*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)] made clear did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment." *Id.*

The comments in *Morris* were comparably more severe than the ones that Duncan heard. Duncan has scarcely alleged – if at all – that the comments she heard unreasonably interfered with her job performance.

Additionally, I count no more than five or six utterances based on sex spanning Duncan's approximate year of employment. Hardly pervasive.

Because the conduct Duncan identifies is not sufficiently severe or pervasive, I grant summary judgment in favor of Lourdes on Duncan's hostile work environment claim.

## C.  Employer Liability

Even if Duncan could establish that the conduct she identifies was sufficiently severe and pervasive to constitute a hostile work environment, she also needs to prove that Lourdes, her employer, is liable.

Duncan must show that Lourdes "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999).

She has not met her burden. Duncan admits that she never specifically reported any harassment during her meetings with Human Resources over summer 2018. She did not specifically report harassment to Lourdes until her December 2018 Title IX complaint. Upon receipt of the Title IX complaint, Lourdes began an investigation and duly notified Duncan that it found no basis for it. At the conclusion of the investigation, Sanders did speak with Smith to make sure that, moving forward, Smith would be more sensitive to interactions that might make Duncan uncomfortable. Following the resolution of her Title IX complaint, Duncan did not report any harassment to Lourdes for the duration of her employment.

Duncan has proffered no facts indicating any deficiency in Lourdes's response to her Title IX complaint. Therefore, although not necessary to dispose of Duncan's claim, *see supra*, I would grant summary judgment in favor of Defendant on the hostile work environment claim due to Duncan's failure to establish Lourdes's liability.

### 3.  Retaliation

Duncan alleges that Lourdes unlawfully retaliated against her for raising her First Charge and Title IX complaint.

A plaintiff can establish a prima facie case of retaliation under Title VII[3] and Ohio law by showing:

> (1) she engaged in protected activity; (2) defendant was aware that she engaged in protected activity; (3) after she engaged in protected activity, defendant took an

---

[3] In her Complaint, Duncan cites 29 U.S.C. § 623, the Age Discrimination in Employment Act, for her retaliation claim. (Doc. 1, pgID 5). Her case has nothing to do with age discrimination, and I construe her claim as falling under Title VII.

"adverse employment action" against her; and (4) "there was a causal connection between the protected activity and the adverse employment action."

*Bush v. ProMedica Toledo Hosp., Inc.*, No. 3:19-CV-85, 2021 WL 1421430, at *6 (N.D. Ohio Apr. 15, 2021) (quoting *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 649 (6th Cir. 2015)), *aff'd*, No. 21-3444, 2022 WL 221639 (6th Cir. Jan. 26, 2022).

If a plaintiff establishes a prima facie case for retaliation, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Bush, supra*, 2021 WL 1421430, at *7 (citing *Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 827 (6th Cir. 2019)).

If the defendant can do so, the burden then shifts back to the plaintiff to show that the reason was pretextual. *Id.*

Lourdes disputes Duncan's ability to establish a causal connection between the end of her employment and her complaints regarding sexual harassment. For the same reasons, Lourdes argues that there was a legitimate non-discriminatory reason for the end of her employment.

I agree with Lourdes on both points.

In her Opposition, Duncan proffers virtually no factual basis for her contention that her First Charge and Title IX complaint caused Lourdes's decision to terminate her. While the burden of establishing a prima facie case of retaliation is "not onerous" and "easily met," *Nguyen v. City of Cleveland*, 229 F.3d 559, 565 (6th Cir. 2000), it is still Duncan's burden to meet.

She has not done so. The record is abundantly clear why Lourdes terminated her. She defied a clear directive from Soper and Smith to provide a testing accommodation for a student. After she did so, she refused to follow Smith's directive that she seek pre-approval from Smith before sending further emails to her colleagues and students. Duncan does not dispute that the VP of Academic Affairs ultimately made the final decision to terminate her.

16

Duncan offers nothing by way of response. She merely recites the elements of a prima facie claim for retaliation without explaining how her claim meets those elements. (Doc. 38, pgID 690). While I will liberally construe *pro se* filings, I will not invent arguments that do not exist.

Duncan has failed to establish her prima facie case, and the inquiry ends there. Assuming *arguendo* that Duncan has made her prima facie case, Lourdes has articulated a legitimate non-discriminatory reason for Duncan's termination: Duncan's flaunting of clear directives from her superiors.

Finally, Duncan has failed to establish that Lourdes's legitimate, non-discriminatory reason was pretextual. The record indicates that there was a clear factual basis for Lourdes's decision, Duncan's insubordination motivated that decision, and her insubordination was a sufficient reason to warrant termination. *See Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014).

I therefore grant summary judgment in favor of Lourdes on Duncan's retaliation claims.

### Motion for Leave to Amend Complaint

Duncan has also filed a Motion for Leave to Amend Complaint. (Doc. 45). She seeks:

> [T]o cure the deficiencies with the pre-existing claims, to increase the financial relief sought, to add the defendants Jacob Dupree, Beverly Sanders, [and] Alisa Smith, and to add [state law claims] for Contract Violation, Fraudulent Misrepresentation, Negligence, Intentional Infliction of Emotional Distress, [a claim under] Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*, Cyber Stalking, Stalking and Defamation"

(Doc. 45, pgID 1459) (cleaned up). She has not appended a proposed amended complaint to her Motion.

Her Motion is entirely untimely and prejudicial to Lourdes, and any amendments to her Complaint would be futile. For all of these reasons, I deny it.

17

Federal Rule of Civil Procedure 15(a)(2) states that I am "freely" to grant a party leave to amend a pleading "when justice so requires." But that right "is not absolute or automatic." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008). When deciding whether to grant leave to amend a complaint, I am to consider "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Miller v. Admin. Off. of Cts.*, 448 F.3d 887, 898 (6th Cir. 2006).

Duncan filed her Motion in July 2023, almost six months past the close of discovery and eleven days after Lourdes's dispositive Motion for Summary Judgment (Doc. 30) became fully briefed. At this stage, Lourdes would experience significant prejudice due to Duncan's delay, and that is sufficient reason to deny Duncan leave to amend. *See Miller, supra*, 448 F.3d at 898 (denying plaintiff leave to amend her complaint where the discovery deadline had passed two weeks ago); *see also Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (finding that an amendment to a complaint after the close of discovery and submission of summary judgment motion would cause "significant prejudice" to defendants).

Duncan attempts to excuse the delay by citing her since-released attorney's alleged act of misleading her by telling her that a complaint amendment would be unnecessary. (Doc. 45, pgID 1463). Her excuse is unconvincing, and she has identified no supporting case law indicating that an amendment would be appropriate under the circumstances. In July 2021, she released her attorney to proceed *pro se*. (Doc. 14). Even if her former attorney's alleged misdirection led Duncan astray, she still had two years between his release and the pendent Motion to seek an amendment at an earlier time.

18

Although the delay and prejudice to Lourdes are ample reason to deny Duncan's Motion, her proposed amendments to the Complaint would also be futile.

Her breach-of-contract claim would fail because Lourdes employed Duncan at-will, and neither party has identified an applicable employment agreement in the course of discovery.

Her fraudulent misrepresentation claim would fail because it is beyond the applicable four-year statute of limitations under Ohio law. R.C. § 2305.09(C). Duncan resigned from Lourdes in May 2019 – meaning that any fraudulent misrepresentation claim would come more than four years later.

For the same reason, her negligence claim would fail because the statute-of-limitations for such claims is either two or four years. R.C. §§ 2305.09(C)-(D); 2305.10(A).

For the same reason, her intentional infliction of emotional distress claim would fail because a four-year statute of limitations applies. *See Crist v. Pugin*, No. 3:08 CV 501, 2008 WL 2571229, at *3 (N.D. Ohio June 25, 2008) (Katz, J.).

For the same reason, her defamation claim would fail because a one-year statute of limitations applies. R.C. § 2305.11(A).

For the same reason, her Title IX claim would fail because it "borrows from Ohio's two-year statute of limitations for personal injury claims." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022). Additionally, "[c]ourts analyze Title IX discrimination and retaliation claims using the same standards as Title VII." *Waters v. Drake*, 105 F. Supp. 3d 780, 803 (S.D. Ohio 2015) (citing *Nelson v. Christian Bros. Univ.*, 226 F. App'x 448, 454 (6th Cir. 2007)). Duncan's Title IX claim would therefore fail for the same reasons I granted Lourdes's Motion for Summary Judgment on her Title VII claims.

19

There is no basis in federal or Ohio law for civil actions for stalking or cyber stalking. Plaintiff has not identified any applicable law to support these claims.

## Conclusion

Duncan has forfeited her argument for my recusal, and her argument has no merit. She has failed to establish prima facie cases for both her hostile work environment and retaliation claims. Her Motion for Leave to Amend Complaint is untimely and significantly prejudicial to Lourdes, and any resulting amendment would be futile.

It is, therefore,

ORDERED THAT:

1.  Plaintiff's Motion for Recusal (Doc. 51) be, and the same hereby is, denied;

2.  Defendant's Motion for Summary Judgment (Doc. 30) be, and the same hereby is, granted in full;

3.  Plaintiff's Motion for Reconsideration of my denial of her Motion for an Extension of Time to File Replies (Doc. 53) be, and the same hereby is, denied;

4.  Plaintiff's Motion to Leave to Amend Complaint (Doc. 45) be, and the same hereby is, denied; and

5.  Plaintiff's Motion to Exclude Evidence (Doc. 44) be, and the same hereby is, denied as moot.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge